UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MCKESSON CORP., et al.,         )
                                )
    Plaintiffs,                  )
                                )
v.                              )    Civ. Action No. 82-0220 (RJL)
                                )
ISLAMIC REPUBLIC OF IRAN, et al.,)
                                )
    Defendants.                  )
_____)

## MEMORANDUM OPINION
November 20, 2009

The plaintiff, McKesson Corporation ("McKesson"), a U.S. company, alleges that the defendant, Islamic Republic of Iran ("Iran"), expropriated McKesson's interest in an Iranian dairy and illegally withheld dividends. In its 27-year history, this case has reached the United States Court of Appeals five times. Most recently, the Court of Appeals remanded to this Court to consider three specific issues: (1) Does McKesson have a cause of action under Iranian law?; (2) Does customary international law provide a cause of action in light of *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004)?; and (3) Does the act of state doctrine apply in this case?  Upon review of the parties' submissions and the extensive record in this case, this Court concludes that McKesson does have a cause of action under Iranian law, that customary international law continues to provide McKesson with a cause of action, even in light of *Sosa*, and that the act of state doctrine does not apply in this case.

## BACKGROUND[1]

In 1960, McKesson and a group of Iranian investors joined together to create Pak Dairy ("Pak"). During the Iranian Revolution in 1979, however, McKesson personnel at Pak fled the country, and the Iranian government took control of Pak's Board of Directors. *See McKesson 2007*, 520 F. Supp. 2d at 40. In 1982, McKesson sued Iran in this Court alleging that Iran had expropriated its 31% interest in Pak and illegally withheld dividends. *See id.*

In 1997, after years of litigation and two appeals to our Circuit Court, Judge Flannery, who was previously assigned this case, found Iran liable for expropriating McKesson's equity interest and for withholding the dividends. *See id.* at 41–42 n.1. Following a trial from January 18 though February 17, 2000, Judge Flannery held that McKesson was entitled to $20,071,159.14 in total damages, which includes the amount of the expropriated property and interest, for violating customary international law and the 1955 Treaty of Amity, Economic Relations, and Consular Rights ("Treaty of Amity" or

---

[1] For additional background, see the previous Court of Appeals's decisions, *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438 (D.C. Cir. 1990) ("*McKesson I*"); *McKesson Corp. v. Islamic Republic of Iran*, 52 F.3d 346 (D.C. Cir. 1995) ("*McKesson II*"); *McKesson HBOC, Inc. v. Islamic Republic of Iran*, 271 F.3d 1101 (D.C. Cir. 2001) ("*McKesson III*"); *McKesson HBOC, Inc. v. Islamic Republic of Iran*, 320 F.3d 280 (D.C. Cir. 2003) ("*McKesson IV*"); and *McKesson Corp. v. Islamic Republic of Iran*, 539 F.3d 485 (D.D.C. 2008) ("*McKesson V*"), as well as previous decisions issued by Judge Flannery and this Court, *McKesson Corp. v. Islamic Republic of Iran*, No. 82-220, 1997 WL 361177 (D.D.C. June 23, 1997) ("*McKesson 1997*"); *McKesson Corp. v. Islamic Republic of Iran*, 116 F. Supp. 2d 13 (D.D.C. 2000) ("*McKesson 2000*"); and *McKesson Corp. v. Islamic Republic of Iran*, 520 F. Supp. 2d 38 (D.D.C. 2007) ("*McKesson 2007*").

"the Treaty") between the United States and Iran. *McKesson 2000*, 116 F. Supp. 2d at 35–36, 43 (citing Treaty of Amity, art. XXI(1), Aug. 15, 1955, 8 U.S.T. 899). In 2001, the Court of Appeals affirmed the judgment in part and remanded for another trial on two particular factual issues. *McKesson III*, 271 F.3d at 1110. After extensive discovery and motions practice with regard to these two factual issues, this Court conducted a three week bench trial on these issues in 2007. Once again, McKesson prevailed at trial under the Treaty, and this Court reinstated the 2000 judgment against Iran. *McKesson 2007*, 520 F. Supp. 2d at 40. On appeal, the Court of Appeals declined to revisit this Court's jurisdiction under the commercial activities exception of the Foreign Sovereign Immunities Act ("FSIA"),[2] but, contrary to its previous decisions, held that the Treaty of Amity does not provide McKesson with a cause of action. *McKesson V*, 539 F.3d at 491. The Court of Appeals, however, remanded the case to this Court for consideration of the previously noted three legal issues.

---

[2]Although McKesson argues Iran violated the law of takings, jurisdiction in this case is predicated on the commercial activities exception, 28 U.S.C. § 1605(a)(2), not the takings exception of FSIA, 28 U.S.C. § 1605(a)(3). *See McKesson III*, 271 F.3d at 1103.

3

## ANALYSIS

### I. McKesson has a cause of action under Iranian law.

McKesson brings several causes of action under Iranian law.[3] Iran, however, not only fails to address the merits of McKesson's Iranian law claims, but concedes that McKesson has, at least, a cause of action under the Commercial Code of Iran (although not one for a taking). (Iran's Mem. of Points and Authorities [Dkt. #901] ("Iran") at 22.)[4] This Court thus concludes that McKesson has a cause of action under Iranian law.[5]

---

[3]Specifically, McKesson alleges Iran has violated the Civil Responsibility Act of Iran, which is based on the laws of Switzerland, (Katirai Appendix A [Dkt #898-2] at 6), and allows an injured party to recover damages caused by the negligent or intentional act of another; the Commercial Code of Iran, Article 90, which requires that shareholders receive annual dividends equal to 10% of net profits; and the Civil Code of Iran, which provides a remedy for property "alienated from the possession of its owner except in accordance with a legal order." (*See* McKesson's Mem. of Points and Authorities [Dkt. #898] ("McKesson") at 12–30.)

[4]Iran argues that the Commercial Code of Iran precludes other Iranian law causes of action. (Iran at 22.) However, Iran does not point to anything in the Commercial Code, another Iranian law, or case establishing this. Additionally, as McKesson's expert explains, Iranian laws generally do not preempt other laws unless they do so explicitly or are clearly in conflict with the other laws. In fact, the Supreme Court of Iran, sitting en banc, has held that a plaintiff was entitled to seek compensation under *both* the Islamic Criminal Law *and* the Civil Responsibility Act. (McKesson's Reply to Iran's Mem. of Points and Authorities [Dkt. #905] ("McKesson Reply"), Ex. A, Supp. Legal Opinion of Mahmoud Katirai ("Katirai Supp.") at 2 n.2 (citing Deliberation and Decisions of the Supreme Court, En Banc, Year 1375 (March 21, 1996- March 20, 1997), p. 168).) Thus, Iran has failed to establish that the Commercial Code precludes other causes of action.
Iran further argues that the Iranian government cannot be sued under the Commercial Code of Iran. (Iran at 26.) This argument also fails, as, again, Iran has not cited to any law establishing or even suggesting this. Furthermore, under FSIA, a "foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 1606.

[5]McKesson argues this Court should determine Iran's liability and damages under Iranian causes of action. However, as this discussion is outside the scope of the Court of Appeals's narrow remand, and Iran has not addressed the merits of McKesson's Iranian law claims, the Court does not address Iran's liability and damages at this time.

4

Rather than contending that McKesson does not have a cause of action under Iranian law, Iran argues that the Treaty of Amity requires McKesson to bring its suit in an Iranian court. (*Id.* at 15.) The Treaty, however, does not require this. In fact, the relevant Treaty provision states, in part:

> Nationals and companies of either High Contracting Party shall have freedom of access to the courts of justice and administrative agencies within the territories of the other High Contracting Party, in all degrees or jurisdiction, both in defense and pursuit of their rights, to the end that prompt and impartial justice shall be done.

Treaty of Amity, art. III, cl. 2. Iran asserts this provision is an "unambiguous provision show[ing] that the parties agreed that their home country courts [in this instance, Iranian courts] would hear disputes brought privately by the investors of the other country." (Iran at 3.) I disagree. Indeed, it is difficult, if not impossible, to comprehend how a provision stating that companies in the United States and Iran *must* have access to the courts of the other country "both in defense and pursuit of their rights" requires McKesson to file its suit in Iran, much less how it requires it "unambiguous[ly]."

Previous decisions in this case also support the conclusion that this Treaty provision is not one that establishes exclusive jurisdiction. As our Court of Appeals itself stated in 2001, although this provision "suggests that one party will receive protections within the territory of the other party, it doesn't say that those protections can *only* be enforced in the territory of the other party," *McKesson III*, 271 F.3d at 1108 (citing *McKesson 1997*, 1997 WL 361177 at 13–14) (emphasis added). In sum, the Treaty does

not contain an exclusive-jurisdiction provision, and it does not preclude McKesson from bringing its Iranian-based cause of action in this Court.

Furthermore, contrary to Iran's argument, the Treaty does not preempt other causes of action merely because it provides McKesson with remedies, such as diplomacy and a suit before the International Court of Justice. *See* Treaty Art. XXI. As a matter of U.S. law, a treaty does not preempt other causes of action absent "clear and convincing evidence" in a treaty's "language, negotiation[,] . . . drafting history," that the treaty precludes judicial review of claims not stemming from it. *Cardenas v. Smith*, 733 F.2d 909, 918–19 (D.C. Cir. 1984). Iranian law regarding treaty preemption is less clear. Iran offers the Court little guidance regarding treaty preemption law, yet McKesson's expert notes that treaties generally do not preempt other causes of action unless they are explicitly exclusive, or clearly inconsistent with each other. (McKesson Reply, Ex. A., Katirai Supp. at 3–4.)

Not surprisingly, Iran has failed to provide this Court with any authority to support its argument that the Treaty of Amity preempts other remedies. And its failure to do so is especially problematic, in light of U.S. law that Iran "bears a heavy burden" to establish by "clear and convincing evidence" an "intent to restrict access to the courts." *Cardenas*, 733 F.2d at 919. Simply put, the Treaty does *not* provide that McKesson must bring its action in an Iranian court and does *not* preempt Iranian law, thus this Court can hear

McKesson's Iranian causes of action.[6] Indeed, hearing McKesson's Iranian causes of action is especially appropriate in light of the post-revolutionary Iranian judicial system's incapability of affording an adequate remedy[7] and this Court's previous finding that "it is hard to imagine . . . that less evidence has ever delayed the awarding of so much, to one so deserving, for so long!" *McKesson 2007*, 520 F. Supp. 2d. at 42.

## II. McKesson also has a cause of action under customary international law.

In *Sosa*, the plaintiff alleged that the U.S. Drug Enforcement Administration instigated his abduction from Mexico for a criminal trial in the United States, and he sought a remedy, in part, under the Alien Tort Statute ("ATS"). 542 U.S. at 697. The Supreme Court found that although the ATS was "in its terms only jurisdictional," it nevertheless "enabled federal courts to hear claims in a very limited category defined by the law of nations and recognized at common law." *Id.* at 712.

---

[6]*See Randall v. Arabian Am. Oil Co.*, 778 F.2d 1146, 1150 (5th Cir. 1985) (finding jurisdiction to hear a case brought under Saudi Arabian labor law); *Basch v. Westinghouse Elec. Corp.*, 777 F.2d 165, 169–72 (4th Cir. 1985) (affirming a judgment was based on Iranian *causes of action*); *Matter of Oil Spill by Amoco Cadiz Off the Coast of France on March 15, 1978*, 954 F.2d 1279, 1313–23 (7th Cir. 1992) (applying French law); *Nikbin v. Islamic Republic of Iran*, 517 F. Supp. 2d 416, 426 (D.D.C. 2007) (concluding "that under Iranian law, although certainly not under United States law, lashing represents a lawful sanction"); *see also* Fed. R. Civ. P. 44.1. (providing that in "determining foreign law," courts "may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence").

[7]*See McKesson 2007*, 520 F. Supp. 2d at 54 (finding that Iran "affords our citizens (and companies) *no* realistic legal process through which to vindicate [their] rights"); *Rockwell Int'l Sys., Inc. v. Citibank, N.A.*, 719 F.2d 583, 587–88 (2d Cir. 1983); *McDonnell Douglas Corp. v. Islamic Republic of Iran*, 758 F.2d 341, 345 (8th Cir. 1985) (refusing to enforce a forum selection clause because litigation in Iran would "be so gravely difficult and inconvenient that [the plaintiff] will for all practicable purposes be deprived of his day in court" (internal quotation omitted)).

This Court finds that, like the ATS, the commercial activities exception to the Foreign Sovereign Immunities Act is more than a jurisdictional statute. This Court finds Congress enacted the commercial activities exception on an understanding that courts would apply causes of action based on customary international law. *See Aquamar, S.A. v. Del Monte Fresh Produce*, 179 F.3d 1279, 1294–95 (11th Cir. 1999) (noting that Congress intended for courts to look to international law when interpreting FSIA's terms). As Judge Flannery himself noted in 1997, "[c]ustomary international law is a part of the law of the United States, and must be ascertained and enforced by federal courts." *McKesson 1997*, 1997 WL 36117 at *15. The Supreme Court in *Sosa* emphasized that "[f]or two centuries [the Supreme Court] ha[s] affirmed that the domestic law of the United States recognizes the law of nations," 542 U.S. at 729. FSIA was enacted against this backdrop, and Congress intended for courts to use FSIA to apply customary international law. As the Supreme Court has held, "[t]he language and history of the FSIA clearly establish that the Act was not intended to affect the substantive law determining the liability of a foreign state or instrumentality, or the attribution of liability among instrumentalities of a foreign state." *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 620 (1983). Even in *Sosa*, the Supreme Court acknowledged the validity of customary international law absent congressional authorization, stating that while it "would welcome any congressional guidance in exercising jurisdiction with such obvious potential to affect foreign relations, *nothing*

*Congress has done is a reason for us to shut the door to the law of nations entirely.*" 542 U.S. at 731 (emphasis added). Thus, this Court finds that, in enacting the commercial activities exception, Congress, in essence, demonstrated its intention that courts hear causes of action involving customary international law violations.

More specifically, this Court finds that Congress intended for courts to hear causes of action for expropriation. Unlike the cause of action the plaintiff sought in *Sosa*, *see* 542 U.S. at 725, the international norm against expropriation in this case is, as Iran concedes, widely accepted by the civilized world, (Iran at 31 (acknowledging "there is some consensus on the general proposition that uncompensated expropriation of alien property is wrongful under at least some circumstances . . .")). Additionally, the norm against expropriation is also defined with specificity. As Judge Flannery noted in 1997, a cause of action for expropriation under customary international law is incorporated in the Restatement (Third) of the Foreign Relations Law of the United States, which provides that "a state is responsible under international law for injury resulting from a taking by the state of property that (1) is not for a public purpose, or (2) is discriminatory, or (3) is not accompanied by provision for just compensation." *McKesson 2007*, 1997 WL 36117 at *15 (citing Restatement § 712). Additionally, international treaties routinely incorporate international norms against uncompensated expropriation and require compensation for the full value of the taken property. (*See* McKesson at 53 (citing numerous Treaties of Friendship, Commerce, and Navigation); *id.* at 55–57 (citing bilateral investment

treaties).)

Indeed, at least with respect to the takings exception to the foreign sovereign immunities act, 28 U.S.C. § 1605(a)(3), (but not the commercial activities exception at issue here), courts have determined, in post-*Sosa* cases, that plaintiffs can bring a cause of action for takings in violation of international law. *See Agudas Chasidei Chabad v. Russian Federation*, 528 F.3d 934, 943 (D.C. Cir. 2008); *see also Cassirer v. Spain*, 580 F.3d 1048, 1060 (9th Cir. 2009) (noting that claims under the Foreign Sovereign Immunities Act, like under the ATS, "depend on the law of nations to define the substantive rights embodied in any cause of action").

Furthermore, congressional intent that courts hear implied causes of action for expropriation under customary international law is evinced by the Second Hickenlooper Amendment, addressed further below, which Congress passed *to ensure* that courts would hear causes of action for expropriation against foreign states. *See* 22 U.S.C. § 2370(e)(2). Based on the foregoing, this Court will not, as a result of *Sosa*, disturb its previous decision to imply in the commercial activities exception a cause of action under customary international law.

## III. The act of state doctrine does not apply in this case.

Finally, our Court of Appeals has asked this Court to address whether the act of state doctrine applies to this case, noting that "[t]he doctrine must be addressed before this litigation is completed because if it applies Iran cannot be held liable." *McKesson V*,

539 F.3d at 491. In applying the act of state doctrine, "the judiciary's interest in hearing a case involving commercial activity is balanced with the desire to avoid matters of foreign affairs controlled by the executive or legislative branches." *Malewicz v. Amsterdam*, 517 F. Supp. 2d 322, 337 (D.D.C. 2007) (internal quotation omitted). Courts "should be mindful that the decision to deny judicial relief to a party should not be made lightly." *Id.* (internal quotation omitted).

Iran, as the party asserting the act of state defense, has the burden of proving the act of state doctrine applies to bar McKesson from seeking relief in this Court. *Agudas Chasidei Chabad of United States v. Russian Federation*, 528 F.3d 934, 951 (D.C. Cir. 2008). Iran has failed to meet its burden. To the extent that Iran is liable under Iranian law, it is in its non-sovereign capacity and the act of state doctrine does not apply. Furthermore, to the extent Iran is liable for expropriation, the Second Hickenlooper Amendment prevents the act of state doctrine from applying. How so?

The act of state doctrine does not apply unless and until the Court declares invalid a sovereign public act. *See W.S. Kirkpatrick & Co., Inc. v. Envtl. Tectonics Corp., Int'l*, 493 U.S. 400, 405 (1990); *Malewicz*, 517 F. Supp. 2d at 337–38. Contrary to McKesson's argument, an act may be a sovereign act of state "even if a court has jurisdiction over the foreign sovereign pursuant to the commercial activity exception to the FSIA." *Virtual Defense and Development Int'l Inc. v. Moldova*, 133 F. Supp. 2d 1, 7 (D.D.C. 1999).

As has been found previously in this case, Iran's denial of dividends was an act "commercial in nature," as "Iran never issued a formal declaration nationalizing Pak Dairy" and "McKesson's claims are akin to a corporate dispute between majority and minority shareholders," *McKesson 1997*, No. 82-220, 1997 WL 361177 at *10 n.17. Unfortunately for the defendant, the act of state doctrine does *not* apply to preclude this Court from inquiring into the validity of such commercial acts.[8] Furthermore, to the extent Iran's acts were not commercial in nature, McKesson's claim is one for expropriation, and Congress has provided, in essence, that the act of state doctrine cannot be used to preclude a court from hearing a case involving a taking by a foreign government in violation of international law. *See* 22 U.S.C. § 2370(e)(2) (the "Second Hickenlooper Amendment"). As a result, the act of state doctrine does not apply in this case.

---

[8] *See Malewicz*, 517 F. Supp. 2d at 339 (finding a government's acquisition of paintings to be a commercial act and noting that while the act was "official" in the sense that it was taken by a government employee acting in his official capacity, "it was not an action taken by right of sovereignty," because "any private person or entity could have purchased the paintings for display in a public or private museum" (internal quotation omitted)); *Virtual Defense*, 133 F. Supp. 2d at 8 (finding a government's selling of military aircraft is not a sovereign act of state).

## CONCLUSION

For all of the above reasons, McKesson has causes of action under Iranian law and an implied cause of action under customary international law for expropriation. Additionally, the act of state doctrine does not prevent this Court from hearing McKesson's claims.

_____
RICHARD J. LEON
United States District Judge