UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MCKESSON CORPORATION, *et al.*,     )
                                    )
            Plaintiffs,             )
                                    )
        v.                          )     Civil Case No. 82-220 (RJL)
                                    )
ISLAMIC REPUBLIC OF IRAN, *et al.*, )
                                    )
            Defendants.             )

MEMORANDUM OPINION
(March 27, 2013) [Dkts. ##960, 961, 969]

The Court welcomes the opportunity to conclude this protracted litigation, which has resulted in two lengthy bench trials and a dozen Circuit and District Court opinions on dispositive issues.[1] After almost thirty years, the end of this "Sisyphean labor" is finally in sight. *McKesson Corp. v. Islamic Republic of Iran*, 672 F.3d 1066, 1072 (D.C. Cir. 2012) ("*McKesson VI*").

---

[1] The six Circuit Court opinions are: *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438 (D.C. Cir. 1990) ("*McKesson I*"); *McKesson Corp. v. Islamic Republic of Iran*, 52 F.3d 346 (D.C. Cir. 1995) ("*McKesson II*"); *McKesson HBOC, Inc. v. Islamic Republic of Iran*, 271 F.3d 1101 (D.C. Cir. 2001) ("*McKesson III*"); *McKesson HBOC, Inc. v. Islamic Republic of Iran*, 320 F.3d 280 (D.C. Cir. 2003) ("*McKesson IV*"); *McKesson Corp. v. Islamic Republic of Iran*, 539 F.3d 485 (D.C. Cir. 2008) ("*McKesson V*"); and *McKesson Corp. v. Islamic Republic of Iran*, 672 F.3d 1066 (D.C. Cir. 2012) ("*McKesson VI*"). The six District Court opinions are: *Foremost McKesson Inc. v. Islamic Republic of Iran*, No. 82-220, 1989 WL 44086 (D.D.C. Apr. 18, 1989) ("*McKesson 1989*"); *McKesson Corp. v. Islamic Republic of Iran*, No. 82-220, 1997 WL 361177 (D.D.C. June 23, 1997) ("*McKesson 1997*"); *McKesson Corp. v. Islamic Republic of Iran*, 116 F. Supp. 2d 13 (D.D.C. 2000) ("*McKesson 2000*"); *McKesson Corp. v. Islamic Republic of Iran*, 520 F. Supp. 2d 38 (D.D.C. 2007) ("*McKesson 2007*"); *McKesson Corp. v. Islamic Republic of Iran*, No. 82-220, 2009 WL 4250767 (D.D.C. Nov. 23, 2009) ("*McKesson 2009*"); and *McKesson Corp. v. Islamic Republic of Iran*, 752 F. Supp. 2d 12 (D.D.C. 2010) ("*McKesson 2010*").

## BACKGROUND

In 1982, plaintiffs McKesson Corporation, et. al., ("McKesson" or plaintiffs) sued defendants Islamic Republic of Iran, et. al., ("Iran" or defendants), claiming that, after the Iranian Revolution, Iran expropriated McKesson's equity interest in an Iranian dairy and withheld McKesson's dividend payments.  On November 19, 2010, this Court entered judgment in favor of McKesson, awarding $43,980,205.58 in damages and compound prejudgment interest.  *McKesson 2010*, 752 F. Supp. 2d at 14.  Iran appealed.

On February 29, 2012, McKesson prevailed over Iran when our Circuit affirmed that "(1) the act of state doctrine does not preclude adjudication of this case; (2) McKesson has a private right of action against Iran under the Treaty of Amity as construed under Iranian law; and (3) Iran is liable for the expropriation of McKesson's interest in [Pak D]airy and the withholding of McKesson's dividends." *McKesson Corp. v. Islamic Republic of Iran*, 672 F.3d 1066, 1072 (D.C. Cir. 2012) ("*McKesson VI*"). This Court's award of compound interest was, however, reversed, and the action remanded "for the calculation of an award based on the value of McKesson's expropriated equity interest and withheld dividends, plus simple interest calculated at 9 percent from August 12, 1981 to the present day." *Id.*

Now before the Court is plaintiffs' Motion for Entry of Final Judgment awarding: (1) damages for expropriated equity and dividends, including simple prejudgment interest; and (2) attorneys' fees and expenses. [Dkts. ##961, 969].  The Court GRANTS in part and DENIES in part plaintiffs' Motion for Entry of Final Judgement.

**ANALYSIS**

I.   **Damages and Prejudgment Interest**

Pursuant to our Circuit Court's directive, *see McKesson VI*, 672 F.3d at 1072, plaintiffs request $7,619,205.29 in damages for expropriated equity and dividends plus prejudgment simple interest calculated at 9 percent from August 12, 1981 to the date of entry of final judgment, Pls.' Corrected Mot., Aug. 3, 2012, pp. 1–2 [Dkt. #969]. Using the online simple interest calculator relied upon by the parties in their joint stipulation on July 23, 2012, [Dkt. #959], to calculate prejudgment simple interest from August 12, 1981 to the present day, March 27, 2013, the Court calculates the appropriate amount of interest to be $21,699,079.18. Thus, the Court now enters final judgment for the plaintiffs, for damages and prejudgment interest, in the amount of $29,318,284.47.

II.   **Attorneys' Fees**

Plaintiffs also seek a total of $11,144,550.00 in compensation for attorneys' fees and expenses they already paid to Morgan, Lewis & Bockius LLP ("Morgan Lewis") and Winston & Strawn LLP ("Winston & Strawn") for work performed between July 2000 and June 30, 2012. *See* Pls.' Reply, Aug. 22, 2012, p. 2 [Dkt. #976]. This amount is comprised of attorneys' fees actually incurred and paid by McKesson[2] during the relevant period, as well as an enhancement[3] to compensate for delay in recovery. *Id.* at 10, 18-20; Pls.' Reply Ex. 13 ("Summary of McKesson's Revised Fee Claim").

---

[2] McKesson paid $7,996,776.00 in attorneys' fees between July 2000 and June 30, 2012. Pls.' Reply Ex. 13 ("Summary of McKesson's Revised Fee Claim") [Dkt. #976-1].

[3] In addition to its actual attorneys' fees, McKesson requests an additional $3,147,774.00

Predictably, defendants oppose plaintiffs' request for attorneys' fees, expenses, and enhancement. Iran's Opp'n to Pls.' Mot. for Entry of Final J. ("Defs.' Opp'n"), Aug. 14, 2012, pp. 4–20 [Dkt. #973]. For the following reasons, I disagree with the defendants and will award all three.

### A.   McKesson's Entitlement to Recover Attorneys' Fees

Plaintiffs argue that Iranian law authorizes the Court to award attorneys' fees and expenses to McKesson as the prevailing party on a Treaty of Amity ("Treaty") claim as construed under Iranian law. Pls.' Corrected Mem. 4–5 [Dkt. #970]; Pls.' Reply 4–7. Defendants dispute that Iranian law permits this Court to award McKesson the attorneys' fees and expenses that it requests. Defs.' Opp'n 4–8. Plaintiffs are correct.

Because our Circuit held that Iran is liable to McKesson for expropriated equity and dividends under the Treaty as construed under Iranian law, the issue of whether attorneys' fees may be awarded to McKesson is also governed by Iranian law. *McKesson VI*, 672 F.3d at 1072; *see* Mem. Op., Nov. 30, 2000, p. 4 [Dkt #548] ("[W]here claims are governed by the law of a foreign state, courts have applied the law of that state to determine whether to award fees to the prevailing party."). Both of the experts who testified in the trial before the Court agreed that Iranian law permits recovery of attorneys' fees and litigation expenses. Indeed, Iran's own expert, Dr. Sanaei, conceded that a prevailing party "could seek reimbursement of litigation costs including attorney fees." Legal Op. of Dr. M.E. Sanaei ("Sanaei Op."), May 14, 2010, p. 14 [Dkt. #927-2],

---

in enhancement to compensate for delay in payment. Pls.' Reply Ex. 13 ("Summary of McKesson's Revised Fee Claim").

English Translation; *see also id.* at 8 (". . . [T]he Treaty sufficiently provides McKesson with a cause of action and the remedy thereto.  Furthermore, McKesson's sole remedy in this Case is the value of its property and interest and attorney fees.").

This expert testimony, not surprisingly, comports with Judge Flannery's November 30, 2000 Judgment [Dkt. #546] granting McKesson's request for an award of attorneys' fees and costs incurred from April 1986 to July 2000.  Judge Flannery was clearly correct when he noted in his memorandum opinion that, "Iranian law provide[s] for the award of legal costs as part of the remedy for expropriation" and "[i]n Iranian courts, the losing party in civil litigation pays both the court costs and the attorneys' fees of the winning party."  Mem. Op., Nov. 30, 2000, pp. 14−15 [Dkt #548].  In addition, Judge Flannery held that the Treaty authorizes awarding legal costs to a party prevailing on an expropriation claim.  *See id.* at 8.  In particular, the Treaty expressly provides that a party whose property has been expropriated shall receive a remedy which is "in no case less than that required by international law."  Treaty of Amity, Economic Relations, and Consular Rights Between the United States and Iran ("Treaty") art. IV, para. 2, Aug. 15, 1955, 8 U.S.T. 899.  Not surprisingly, Judge Flannery, therefore, concluded that this provision of the Treaty authorized fee shifting because the "loser pays" principle is "so well-accepted that it may be viewed as a general principle of international law."  Mem. Op., Nov. 30, 2000, pp. 10−11 (quotations and citations omitted) [Dkt. #548].

### B.    Reasonable Award of Attorneys' Fees

Thus, since this Court clearly has the authority to award attorneys' fees and expenses, it must determine what exactly constitutes a reasonable award of attorneys' fees. *Copeland v. Marshall*, 641 F.2d 880, 901 (D.C. Cir. 1980) (en banc).[4] In doing so, the Court must determine two variables: (1) a reasonable hourly rate; and (2) a reasonable number of hours expended on the litigation. *Blum v. Stenson*, 465 U.S. 886, 888 (1984); *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995). The product of these two variables is called the "lodestar" amount, which is *presumed* to represent a reasonable fee. *Board of Trustees of the Hotel & Restaurant Employees Local 25 v. JPR Inc.*, 136 F.3d 794, 801 (D.C. Cir. 1998); *Miller v. Holzman*, 575 F. Supp. 2d. 2, 11 (D.D.C. 2008), *rev'd in part, aff'd in part by U.S. ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 786 F. Supp. 2d 110 (D.D.C. 2011). Indeed, the Supreme Court itself has endorsed the "lodestar" approach to determining a reasonable award of attorneys' fees, *see Hensley v. Eckerhart*, 461 U.S. 424 (1983), and federal courts follow the approach in most cases where "fees [are] properly shifted to the los[ing party] in the litigation," *see Gisbrecht v. Barnhart*, 535 U.S. 789, 801–802 (2002). What then, are a reasonable hourly rate and a reasonable number of hours?

---

[4] In Iran, reimbursable attorneys' fees are set by tariff in certain types of cases. 2d Supp. Katirai Op. 21 [Dkt. 929-1]. These tariffs have no bearing, however, on this Court's discretion to determine a reasonable award of attorney's fees to compensate McKesson. *See id.* at 21-24; *see also Novak v. Capital Mgmt. & Dev. Corp.*, 496 F. Supp. 2d 156, 159 (D.D.C. 2007) ("[T]here is no standard rate for attorneys in the District of Columbia.") (quotation marks and citations omitted).

### 1.   Reasonable Hourly Rate

McKesson contends that the standard billing rates charged by Morgan Lewis and Winston & Strawn should supply the rates used to calculate the lodestar. Pls.' Corrected Mem. 7; Pls.' Reply 7–14.  Iran, not surprisingly, contends that the rates used to calculate the lodestar should be derived from the *Laffey* Matrix. Defs.' Opp'n 8–10.  Moreover, McKesson argues that 2012 rates should be applied to work performed prior to 2012 as a means to compensate McKesson for delay in payment. Pls.' Reply 18–21.  Iran, predictably, argues that McKesson is not entitled to any enhancement for delay. Defs.' Opp'n 17–19.  For the following reasons, I agree with McKesson that the 2012 standard billing rates charged by Morgan Lewis and Winston & Strawn are the reasonable hourly rates the Court should use to calculate the lodestar.

The Supreme Court has endorsed a market-based approach to calculating attorneys' fees. *See Missouri v. Jenkins*, 491 U.S. 274, 285 (1989) ("[W]e have consistently looked to the marketplace as our guide to what is 'reasonable.'") (citations and quotations omitted).  Accordingly, our Circuit presumes "an attorney's usual billing rate" to be "the reasonable rate, provided that this rate is 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Kattan ex rel. Kattan v. District of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993) (quoting *Blum*, 465 U.S. 886, 895–96 n.11); *see also Copeland*, 641 F.2d. at 892 ("The reasonable hourly rate is that prevailing in the community for similar work."). Using a firm's established billing scale to calculate the lodestar amount is fair because

"[t]he established rates represent the opportunity cost of what the firm turned away in order to take the litigation . . . ." *Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4, 24 (D.C. Cir. 1984) (emphasis in original), *overruled on other grounds by Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516, 1524 (D.C. Cir. 1988) (en banc).

In *Covington v. District of Columbia*, 57 F.3d 1101 (D.C. Cir. 1995), *cert. denied*, 516 U.S. 1115 (1996), our Circuit Court outlined the elements that a fee applicant must show to establish a reasonable hourly rate, namely: "the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community." *Covington*, 57 F.3d at 1107; *see also Blum*, 465 U.S. at 896 n.11 ("[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."). There is no question here that McKesson has established the first *Covington* element pertaining to the billing practices of Morgan Lewis and Winston & Strawn. McKesson's lead counsel, Mark Bravin, submitted three declarations avowing that Morgan Lewis and Winston & Strawn charged McKesson according to their standard billing scales. *See* 2012 Bravin Decl. [Dkt. #971]; 2011 Bravin Decl. [Dkt. #946]; 2007 Bravin Decl. [Dkt. #889].[5] McKesson has also satisfied its evidentiary burden with respect to the second *Covington* element by setting forth in its various fee applications the impressive credentials of each attorney who worked on this case. *See* Pls.' Corrected

---

[5] Mr. Bravin is currently a partner at Winston & Strawn and was a partner at Morgan Lewis until January 26, 2011. 2012 Bravin Decl. ¶ 4 [Dkt. #971]. He now leads Winston & Strawn's International Arbitration practice. Pls.' Corrected Mem. 9 [Dkt. # 970].

Mot. Ex. 1, July 31, 2012 (Biographies of Morgan Lewis Attorneys) [Dkt. #968-1]; *id.* at

Ex. 2 (Biographies of Winston & Strawn Attorneys) [Dkt. #968-2]; 2011 Fee Application

Ex. 3 (Biographies of Morgan Lewis Attorneys) [Dkt. #945-3]; 2007 Fee Application Ex.

3 (Biographies of Morgan Lewis Attorneys) [Dkt. #891]. Mr. Bravin, for example, a

graduate of the Harvard Law School, has over 30 years of experience in the field of

international dispute resolution, and has been consistently recognized as a nationwide

leader in that field. Pls.' Corrected Mem. Ex. 2 (Biographies of Winston & Strawn

Attorneys) [Dkt. #968-2].

With respect to the third *Covington* element, however, McKesson and Iran

disagree on "the prevailing market rates in the relevant community." *Covington*, 57 F.3d

at 1107. In that regard, McKesson has submitted affidavits as well as survey data. *See,*

*e.g.*, Gavin Decl., July 30, 2012 [Dkt. #963]; Supp. Gavin Decl., Aug. 22, 2012 [Dkt.

#976-1]; 2011 Fee Application Ex. 6 (*National Law Journal* Billing Rates Publication for

2007 to 2010) [Dkt. #945-6]; *id.* at Ex. 7 (*Of Counsel* billing rates publication for 2007-

2010) [Dkt #945-7]; *id.* at Ex. 8 (*National Law Journal* billing rates for associates by

class) [Dkt. #945-8]; 2007 Fee Application Ex. 5 (*National Law Journal* Billing Rates

Publication, Dec. 18, 2000 ) [Dkt. #891]; *id.* at Ex. 6 (*Of Counsel* billing rates

publication, Nov. 2000); *id.* at Ex. 7 (*National Law Journal* billing rates for associates by

class). Iran, once again, strongly objects to McKesson's survey data and argues that the

appropriate benchmark should be the so-called *Laffey* matrix.[6] Defs.' Opp'n 8–10.  I disagree.

The resolution of the parties' dispute as to the third *Covington* element is squarely within this Court's discretion.  Our Circuit Court in *Covington* specifically provided that "[i]n order to demonstrate this third element, plaintiffs may point to . . . their own survey of prevailing market rates in the community." 57 F.3d at 1109 (emphases added).  In a case of this nature involving two private litigants, I find that "the best measure of [the rates] the market will allow are the rates actually charged." *Yazdani v. Access ATM*, 474 F. Supp. 2d 134, 138 (D.D.C. 2007).  The *Laffey* Matrix, by contrast, provides an indicator of the rates to which the government will not object when fees are sought under a fee shifting statue. *See Novak v. Capital Mgmt. & Dev. Corp.*, 496 F. Supp. 2d 156, 159 (D.D.C. 2007) (noting that the Civil Division of the United States Attorney's Office promulgated the *Laffey* Matrix "to indicate to the bar those rates to which the government will not object").

As evidence of the market rate in the District of Columbia during the relevant period, McKesson submitted billing rate survey data for 2000 to 2010 prepared by the *National Law Journal* and *Of Counsel,* both of which are reliable publications. *See* 2011 Fee Application Exs. 6–8; 2007 Fee Application Exs. 5–7.  McKesson also submitted data from the 2010, 2011, and 2012 PricewaterhouseCoopers LLP Billing Rate and

---

[6] The *Laffey* Matrix was first approved in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354, 371-375 (D.D.C. 1983), *aff'd*, 746 F.2d 4 (D.C. Cir. 1984), *overruled in part on other grounds by Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516, 1524 (D.C. Cir. 1988) (en banc).

Salary Surveys (BRASS) for AmLaw100 and other large firms in the Washington, D.C. legal market. *See* Gavin Decl.; Supp. Gavin Decl.

The Court finds that this survey data adequately corroborates the standard billing rates claimed by Morgan Lewis and Winston & Strawn during this period. Indeed, other courts in our Circuit have relied on such data to assess the reasonableness of standard billing rates charged by large law firms with offices in the District of Columbia. *See, e.g.*, *Wilcox v. Sisson*, No. 02-1455, 2006 WL 1443981, at *2 (D.D.C. May 25, 2006) (holding rates charged by Williams & Connolly LLP to be reasonable based on the Helder Associates' 2004 Law Firm Billing Rate Survey); *Miller*, 575 F. Supp. 2d. at 12-13 (finding rates charged by Wilmer Cutler Pickering Hale and Dorr LLP ("Wilmer Hale") to be reasonable based on two attorney declarations and *The National Law Journal's* 2006 annual survey of billing rates).

In the final analysis, Iran has failed to rebut the presumption that the standard billing rates Morgan Lewis and Winston & Strawn charged McKesson are reasonable. Iran's "simple reference to the *Laffey* matrix cannot defeat the presumption of reasonableness." *Miller*, 575 F. Supp. 2d. at 15. In fact, in our Circuit, standard billing rates are presumed to be reasonable where they align with prevailing market rates for similar services by similarly situated lawyers, even if they do not correspond with the *Laffey* matrix. *Kattan*, 995 F.2d at 278–79 (D.C. Cir. 1993); *Miller*, 575 F. Supp. 2d. at 15-16 (holding rates charged by Wilmer Hale to be reasonable despite 38 percent variance with *Laffey* Matrix); *Woodland v. Viacom, Inc.*, 255 F.R.D. 278, 281 (D.D.C.

2008) (granting fee petition submitted by Morgan Lewis notwithstanding that the figures in the *Laffey* Matrix "are unquestionably lower").

McKesson, however, asks the Court to go one step further and use 2012 billing rates to calculate the lodestar for 2000 through 2012 in order to provide an enhancement for delay in payment. Pls.' Reply 18–20. Iran, of course, opposes any enhancement, reasoning that the delay was justified and "each appeal resulted in at least some portion of the appealed judgment being reversed or remanded for additional proceedings." Defs.' Opp'n 18. Once again, I disagree.

When legal services have been provided over a multiple-year period, enhancement for delay in payment is part of a reasonable attorneys' fee. *See Jenkins*, 491 U.S. at 282. As Judge Flannery himself noted in this case, "courts often award fees at counsel's current rates instead of their historical rates" to account for "the loss of the time value of their money." Mem. Op. Nov. 30, 2000, p. 23, n.2 [Dkt #548]. The rationale for the current-rate enhancement method is basic economics: "one dollar received today is more valuable than it would be if received five years from now for two reasons—first, because it will buy more now than it will after five years of price inflation, and second, because of the interest that can be earned from it in the interim." *Miller*, 575 F. Supp. 2d. at 20.

Both the Supreme Court and our Circuit have endorsed this "current-rate" enhancement method as a means to compensate a prevailing party for harm resulting from delay in receiving payment. *Jenkins*, 491 U.S. at 282; *Copeland*, 641 F.2d. at 893 n.23; *see also Muldrow v. Re-direct Inc.*, 397 F. Supp. 2d 1, 4 n.4 (D.D.C. 2005). Here,

McKesson has conservatively applied the method in a manner that takes into account the various attorneys' levels of experience when they performed the work. *See* Pls.' Reply 19 ("[F]ees . . . for work performed in 2009 by a third-year associate are enhanced using the 2012 rate for a third-year."). Accordingly, I will exercise my discretion to compensate McKesson for this delay in payment by applying 2012 rates in calculating the lodestar.

### 2.    Reasonable Number of Hours

To establish the second component of the lodestar—the number of hours reasonably expended on the litigation—a fee applicant must produce evidence that supports the hours worked. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The time records submitted must be sufficiently detailed to permit the District Court to make an independent determination whether the "activities they purport to describe were . . . reasonable" and "the hours claimed are justified." *Miller*, 575 F. Supp. 2d. at 21 (citations and quotations omitted); *see also Cobell v. Norton*, 231 F. Supp. 2d 295, 306 (D.D.C. 2002); *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982). The time records need not, however, "present the exact number of minutes spent nor the precise activity to which each hour was devoted," *Cobell*, 231 F. Supp. 2d at 306, and "it is the law of this Circuit that the requirement of submitting detailed records should not be applied in a Draconian manner," *Novak*, 496 F. Supp. 2d at 158–59.

Unproductive tasks performed by counsel and professional staff, of course, are not compensable. *Copeland*, 641 F.2d at 891. "For example, where three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time." *Id*. Accordingly, a fee applicant should exercise good billing judgment and exclude from its fee application any "hours that are excessive, redundant, or otherwise unnecessary." *Miller*, 575 F. Supp. 2d. at 21. Similarly, "time spent litigating claims upon which the party seeking the fee did not ultimately prevail" is non-compensable and should be excluded from a fee application. *Copeland*, 641 F.2d at 891–92, n.18 (citations and quotations omitted).

If a Court determines that the work performed was duplicative or wasteful, it may "simply reduc[e] the proposed 'lodestar' fee by a reasonable amount without performing an item-by-item accounting." *LaPrade v. Kidder Peabody & Co.*, 146 F.3d 899, 906 (D.C. Cir. 1998); *see also Copeland*, 641 F.2d at 903 ("We think that the District Court Judge in this case—recognizing, as he did, that some duplication or waste of effort had occurred—did not err in simply reducing the proposed 'lodestar' fee by a reasonable amount without performing an item-by-item accounting."). Indeed, the Court may also reject hours associated with vague work descriptions from which it cannot ascertain the reasonableness of the time claimed. *Wilcox v. Sisson*, No. 02-1455, 2006 WL 1443981, at *3 (D.D.C. May 25, 2006).

Here, McKesson has submitted time records accounting for 18,537.5 hours of work performed over a 12 year period. The time records describe the nature of the work performed, the attorney performing the work, and the hours spent on the task. *See Pls.'*

Corrected Mot. Ex. 4 ("Morgan Lewis Time Records and Fees, Sept. 1, 2010 – Jan. 25, 2011) [Dkt. #968-4]; *id.* at Ex. 5 ("Winston & Strawn Time Records and Fees, Jan. 26, 2011 – June 30, 2011") [Dkt. #968-5]; 2011 Fee Application Ex. 9 ("Morgan Lewis Time Records and Fees Billed to Plaintiff for Aug. 1, 2007 through August 31, 2010") [Dkt. #945-9]; 2007 Fee Application Ex. 14 [Dkt. #981].

Defendants' objections to McKesson's claimed hours fall into three categories. First, defendants contend that work descriptions continued in the time records submitted by McKesson are "vague or too generalized to allow meaningful scrutiny as to their reasonableness." Defs.' Opp'n 11–12. Second, defendants contend that McKesson cannot recover for time expended on redundant and unnecessary tasks and time expended due to inefficient staffing. *Id.* at 12–14. Third, defendants contend McKesson cannot recover for time spent litigating claims upon which McKesson did not ultimately prevail. *Id.* at 14–16. Defendants argue that these flaws justify either a total disallowance of fees or a 50 percent across-the-board reduction in a lodestar amount calculated using rates derived from the *Laffey* matrix. *Id.* at 16–17. I disagree.

Iran's arguments regarding McKesson's prevailing party status are, to say the least, unpersuasive. McKesson is in no way guilty, as Iran suggests, of "'piggybacking' fees incurred for work done on losing claims onto unrelated winning issues." *Goos*, 997 F.2d at 1569 (quoting *George Hyman Constr. Co. v. Brooks,* 963 F.2d 1532, 1537 (D.C. Cir. 1992)). McKesson sought damages for expropriation of its equity interest in Pak Dairy and for the withholding of its dividends. McKesson ultimately prevailed on its Treaty claim, entitling McKesson to very substantial damage award. McKesson did not

fail to prevail on any claims that were *unrelated* to the Treaty claim. *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (noting that lodestar should be adjusted downward where the plaintiff "fail[s] to prevail on claims that were *unrelated* to the claims on which he succeeded") (emphasis added). All of McKesson's claims for relief were based on a "common core of facts" and "related legal theories." *Goos v. Nat'l Ass'n of Realtors*, 997 F.2d 1565, 1569 (D.C. Cir. 1993). Such claims "cannot be viewed as a series of discrete claims." *Id.*

Defendants, however, do raise a few legitimate objections regarding inefficiencies created by McKesson's counsel in running and staffing the case. For example, McKesson concedes and the Court agrees that the award should be reduced to reflect the time of two, rather than four, attorneys at the *McKesson VI* oral argument on October 14, 2011. Pls.' Reply 18. Excluding these inappropriate time entries reduces the requested lodestar amount of $11,144,550.00 by $2,202.00. *Id.* In addition, McKesson concedes that it should not have requested reimbursement for 1.3 hours of Mr. Bravin's time spent responding to the media on October 19, 2011. *Id.* Excluding this time reduces the requested lodestar amount by an additional $975.00. *Id.*

In addition to striking these specific time entries, the Court concludes that reducing the requested lodestar amount by a percentage is warranted because various time entries contain vague descriptions of the work performed. For example, multiple time entries for June 2011 contain vague and generalized descriptions such as "[w]ork on appeal brief." *See, e.g.,* Pls.' Corrected Mot. Ex. 5 (6/17/11 time entry for Mark Bravin)

[Dkt. #968-5].  The Court cannot ascertain from this type of description whether the time was reasonably expended by counsel.  In addition, the practice of block billing (*i.e.*, grouping into one time entry all the tasks a timekeeper performed on a given day) precludes the Court from assessing the reasonableness of the time expended each task.  *Role Models Am., Inc.*, 353 F.3d at 971.  Based on the extent of generic and ambiguous narrative descriptions and the use of block billing, the Court believes a 10 percent reduction to be reasonable and appropriate here.  *Cf. Miller v. Holzman*, 575 F. Supp. 2d. at 36 (reducing compensation by 10 percent because "counsel's time records are simply rife with ambiguous and nugatory entries"); *Role Models Am., Inc.*, 353 F.3d at 973 (reducing compensation by 50 percent due to "inadequate documentation, failure to justify the number of hours sought, inconsistencies, and improper billing entries").

Accordingly, in calculating the lodestar in this amount, I will reduce the amount requested by McKesson by $3,177.00 associated with specific time entries and then by 10 percent for the ambiguous nature of various time entries.  Subtracting $3,177.00 from the requested lodestar amount of $11,144,550.00 and applying the 10 percent wholesale reduction yields a reasonable lodestar value of $10,027,235.70.

## III.   McKesson's Costs Other Than Attorneys' Fees

In addition to attorneys' fees, McKesson has also incurred various other costs in connection with this litigation, ranging from copying costs to fees paid to experts.  McKesson seeks to recoup $31,013.94 in taxable costs incurred from August 1, 2000 through July 31, 2007.  Pl.'s Reply Ex. 9 [Dkt. #976-1].  McKesson also seeks to recover

17

$1,174,466.29 as compensation for nontaxable costs other than attorneys' fees incurred from August 1, 2000 through June 30, 2012. *Id.* at Ex. 13. This amount is comprised of actual expenses of $1,005,007.28 and prejudgment interest of $169,459.01 to compensate for delay in payment. *Id.* at Ex. 15. For the following reasons, both requests are perfectly appropriate and fair.

## A.    Taxable Costs

Federal Rule of Civil Procedure 54(d)(1) permits a "prevailing party" to recover costs other than attorneys' fees from a private defendant. FED. R. CIV. P. 54(d)(1). Categories of recoverable taxable costs are delineated in 28 U.S.C. § 1920. Those costs may include witness fees pursuant to 28 U.S.C. § 1821(b) as well as witness travel and subsistence costs under 18 U.S.C. §§ 1821(c) and (d). *See* 28 U.S.C. § 1920(3); *see also* L. Cv. R. 54(1)(d)(10). A prevailing party may also recover costs for "exemplification and . . . copies necessarily obtained for use in the case." 28 U.S.C. § 1920(4); *see also* L. Cv. R. 54(1)(d)(8)−(9). Moreover, the Court is authorized to tax costs for "fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case." 28 U.S.C. § 1920(2); *see also* L. Cv. R. 54.1(d)(7). Local Civil Rule 54(1)(d)(6) also provides for taxation of "the cost, at the reporter's standard rate, of the original and one copy of any deposition noticed by the prevailing party, and of one copy of any deposition noticed by any other party, if the deposition was used on the record, at a hearing, or trial. . . ." Finally, 28 U.S.C. § 1920(6) allows taxation of costs for "compensation of interpreters."

Here, McKesson provided a Bill of Costs [Dkt. #886] and a supporting declaration by lead counsel Mark Bravin [Dkt. #887] attaching relevant documentation [Dkt. #887-1] to support its request for $31,013.94 in taxable costs incurred from mid-2000 through July 31, 2007.  McKesson requests total witness costs of $1,689.60.  2007 Bravin Decl. on Pls.' Bill of Costs, Tab A-1 [Dkt. # 887-1].  McKesson seeks $201.00 for copies of exhibits introduced by McKesson at trial, *id.* at Tab B [Dkt. #887-3], $135.84 for copies of deposition exhibits admitted into evidence at trial, *id.* at Tab C [Dkt. #887-4], and $300.00 in other photocopying costs, *id.* at Tab D [Dkt. #887-5].  McKesson seeks court reporter fees for trial transcripts in the amount of $8,303.88,  *id.* at Tab E [Dkt. #887-6], and deposition transcripts in the amount of $8,715.44, *id.* at Tab F [Dkt. #887-7].  McKesson seeks $11,668.18 in translation costs for four Farsi-speaking witnesses deposed at the Hague who later testified at trial.  *Id.* at Tab G [Dkt. #887-8].

McKesson's Bill of Costs is well-supported factually and legally and conforms to the guidelines previously established by this Court.  *See* Mem. Op. & Order, Sept. 13, 2000 [Dkt. #529].  Accordingly, I conclude that McKesson's total costs in the amount of $31,013.94 are properly taxable, and should indeed be taxed against Iran.

## B.    Nontaxable Costs

Pursuant to Federal Rule of Civil Procedure 54(d)(2), the companion provision to Rule 54(d)(1), a prevailing party may recover "related non-taxable expenses" in addition to taxable costs where the controlling substantive law permits.  Mem. Op., Nov. 30, 2000, p. 20 [Dkt. #548].  Here, Iranian law permits recovery of legal costs; therefore,

McKesson may receive "related non-taxable expenses" in this action.  In fact, our Circuit has construed "non-taxable expenses" as "reasonable out-of-pocket expenses . . . normally charged to a fee-paying client." *Laffey*, 746 F.2d at 30.

To support its request for $1,174,466 in compensation for nontaxable costs, McKesson has provided multiple declarations by lead counsel Mark Bravin itemizing costs invoiced by Morgan Lewis and Winston & Strawn as well as costs invoiced directly to McKesson. *See* 2012 Bravin Decl. Exs. E, F [Dkt. #971-1]; 2011 Bravin Decl. Exs. G, H [Dkts. ##946-7; 946-8]; 2007 Bravin Decl. Exs. I, J. [Dkts. ##889-9; 889-10].  The costs claimed by McKesson, which include costs for travel, translation services, and legal research, among others, are typical of the costs that large firms incur and charge to their clients in this type of complex and protracted litigation.  McKesson has established that all claimed expenses were in fact charged to and paid by McKesson.  Defendants make no serious challenge to either the categories or the amounts of expense, both of which the Court finds to be reasonable in light of the length and complexity of the case.  The Court therefore will award McKesson $1,174,466.29 in compensation for nontaxable costs

## CONCLUSION

For all of the foregoing reasons, the Court GRANTS in part and DENIES in part plaintiffs' Motion for Entry of Final Judgment. [Dkts. ##961, 969].  The Court shall ORDER defendants to pay plaintiffs $29,318,284.47 in damages and interest for expropriated equity and dividends, $10,027,235.70 in reasonable attorneys' fees, $31,013.94 in taxable costs, and $1,174,466.29 in enhanced expenses—in total

$40,551,000.40. Furthermore, the Court DENIES as MOOT defendants' July 30, 2012

Motion. [Dkt. #960]. An order consistent with this decision accompanies this

Memorandum Opinion.


RICHARD J. LEON
United States District Judge