IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FOREMOST MCKESSON, INC., <br> FOREMOST TEHRAN, INC., <br> FOREMOST SHIR, <br> INC., FOREMOST IRAN CORPORATION, <br> FOREMOST FOODS, INC., <br> One Post Street <br> San Francisco, California  94104 <br> (415) 983-8300 <br><br> and <br><br> OVERSEAS PRIVATE INVESTMENT CORPORATION, <br> 1129 20th Street, N.W. <br> Washington, D.C.  20057 <br> (202) 653-2920 <br><br> v. <br><br> THE ISLAMIC REPUBLIC OF IRAN, <br> Tehran, Iran, <br><br> FINANCIAL ORGANIZATION FOR THE EXPANSION <br> OF OWNERSHIP OF PRODUCTIVE UNITS, <br> Tehran, Iran, <br><br> NATIONAL INVESTMENT COMPANY OF IRAN, <br> Tehran, Iran <br><br> INDUSTRIAL AND MINING AND DEVELOPMENT <br> BANK OF IRAN, <br> Tehran, Iran, <br><br> FOUNDATION FOR THE OPPRESSED, <br> Tehran, Iran, <br><br> and <br><br> SHERKAT SAHAMI LABANIAT PASTEURIZE PAK, <br> P.O. Box 2252 <br> Tehran, Iran. | Civil Action No. <br><br> 82- 0220 <br><br><br> FILED <br> JAN 22 1982 <br> JAMES F. DAVEY, Clerk |

OBERDORFER, J.

COMPLAINT FOR DAMAGES
FOR EXPROPRIATION

E

Foremost-McKesson, Inc., Foremost Tehran, Inc., Foremost Shir, Inc., Foremost Iran Corporation, Foremost Foods, Inc., (hereafter individually and collectively referred to as "Foremost") and Overseas Private Investment Corporation respectfully allege:

## PARTIES

1. Plaintiff, Foremost-McKesson, Inc. is, and at all material times mentioned herein, has been a corporation duly organized and existing under the laws of the State of Maryland, with its principal place of business in San Francisco, California.

2. Plaintiffs Foremost Tehran, Inc., Foremost Shir, Inc., Foremost Iran Corporation, and Foremost Foods, Inc. are, and at all material times mentioned herein have been, corporations duly organized and existing under the laws of the State of California, with their principal place of business in San Francisco, California.

3. Plaintiffs Foremost Tehran, Inc., Foremost Shir, Inc., Foremost Iran Corporation, and Foremost Foods, Inc. are, and at all material times mentioned herein have been, wholly owned subsidiaries of Foremost-McKesson, Inc.

4. Foremost is engaged, *inter alia*, in the production and sale of dairy products in the United States and in various foreign countries.

5. Plaintiff Overseas Private Investment Corporation ("OPIC") is, and at all material times mentioned herein has been, a corporation duly organized and existing under the laws of the United States. It is an agency of the United States, established pursuant to 22 U.S.C. § 2191 *et seq.*, engaged in the business of insuring private overseas investments of citizens of the United States, and corporations in which the substantial beneficial interests are owned by citizens of the United States, against expropriation and other risks. OPIC is authorized to sue and to be sued in its corporate name pursuant to 22 U.S.C. § 2199(d).

6. Defendant Islamic Republic of Iran ("Iran") is a foreign sovereign state, with its capital at Tehran, Iran, and is party to the bilateral Treaty of Amity, Economic Relations,

- 3 -

and Consular Rights Between the United States of America and Iran, August 15, 1955, 8 U.S.T. 899, T.I.A.S. No. 3853 ("the Treaty of Amity"). Iran has acted at material times herein through the Government of Iran and through agencies, instrumentalities, and entities of Iran within the definition of 28 U.S.C. § 1603(b). These agencies, instrumentalities, and entities include the Financial Organization for the Expansion of Ownership of Productive Units, the National Investment Company of Iran, the Industrial Mining and Development Bank of Iran, the Foundation for the Oppressed, and Sherkat Sahami Labaniat Pasteurize Pak.

7. On information and belief, defendant Financial Organization for the Expansion of Ownership of Productive Units ("Financial Organization") is an agency or instrumentality of Iran as defined in 28 U.S.C. § 1603(b).

8. On information and belief, defendant National Investment Company of Iran ("NICI") is an agency or instrumentality of Iran as defined by 28 U.S.C. § 1603(b).

9. On information and belief, defendant Industrial and Mining and Development Bank of Iran ("IMDBI") is an agency or instrumentality of Iran as defined by 28 U.S.C. § 1603(b).

10. On information and belief, defendant Foundation for the Oppressed is an agency or instrumentality of Iran as defined in 28 U.S.C. § 1603(b).

11. On information and belief, defendant Sherkat Sahami Labaniat Pasteurize Pak (hereafter "Pak Dairy") is, and at all

material times mentioned herein was, a Joint Stock Company, organized and existing under the laws of Iran. Its principal place of business is in Tehran, Iran. It is controlled by Iran, and is an agency or instrumentality of Iran, as defined in 28 U.S.C. § 1603(b).

## JURISDICTION

12. This court has jurisdiction of this action under 28 U.S.C. §§ 1330(a) and 1331, and the Treaty of Amity. Pursuant to the provisions of the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1604 and 1605(a)(1) and (a)(2), and Article XI, Paragraph (4) of the Treaty of Amity, defendants are not immune from suit in the courts of the United States with respect to this action. This action is based upon defendants' actions in connection with their commercial activities, which actions have caused a direct effect in the United States. This action is also based upon acts performed by the plaintiffs in the United States and in Iran in connection with defendants' commercial activities. The amount in controversy, exclusive of interest and costs, exceeds $10,000.

13. The defendants are subject to personal jurisdiction by virtue of 28 U.S.C. § 1330(b), and are subject to service of process in this action by virtue of 28 U.S.C. § 1608(a).

14. This action is not barred by the Declaration of the Democratic and Popular Republic of Algeria Concerning the Settlement of Claims by the Government of the United States of America and the Government of the Islamic Republic of Iran, dated January 19, 1981 ("Declaration"). Executive Order No. 12294, dated February 24, 1981, implemented by 31 C.F.R. § 535.222, expressly provides for the commencement of actions against Iran for purposes of tolling the period of limitations.

- 5 -

Plaintiffs herein have filed Statements of Claim with respect to the subject matter of this action with the Iran-United States Claims Tribunal established by the Declaration in The Hague, The Netherlands.

### VENUE

15. Venue of this action is located in the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1391(f)(4).

### CLAIM FOR RELIEF

Foremost's Investment in Pak Dairy

16. Plaintiffs hereby reallege paragraphs 1-15.

17. At the request of a group of Iranian citizens in 1959, Foremost agreed to assist in the establishment of Pak Dairy in Iran, by providing one-half of the required capital, and all of the necessary management skills and personnel, engineering data, sources of material, procurement services, ingredients, and packaging. Through separate agreements, Foremost agreed to provide technical assistance as needed, and licensed its trademarks in exchange for receipt of royalties.

18. Foremost, through a former subsidiary, International Dairy Engineering Company, thereupon applied under the Iranian Law Concerning the Attraction and Protection of Foreign Investments to the Iranian Ministry of Commerce for approval of the proposed venture. On July 8, 1959, the Council of Ministers approved the venture.

19. As consideration for its undertakings, Foremost received a 50 percent ownership interest in Pak Dairy. Through the ensuing years, Foremost continued to supply needed capital. The percentage of Foremost's ownership interest increased to 87 percent in 1965-1966, decreased to 60 percent in 1969-1970,

decreased to 51 percent in 1974, and finally decreased to 31 percent in 1975-1976. Until 1979, however, Foremost provided the top management for the company and controlled the Board of Directors with the consent and cooperation of all other shareholders. As a result, Pak Dairy operated profitably after 1965-1966.

20. By insurance contracts with OPIC, executed at the time of the initial investment, Foremost obtained insurance covering a portion of its investment in Pak Dairy against expropriation and other risks under terms that provide for limited compensation in the event of expropriatory action by the host country (Iran).

21. Foremost's investment in Iran was protected by Iranian and international law, including the provisions of the Treaty of Amity. The Treaty of Amity specifically provides, among other things, as follows:

> 1. Each High Contracting Party . . . shall refrain from applying unreasonable or discriminatory measures that would impair [the] legally acquired rights and interests [of nationals and companies of the other High Contracting Party].
>
> 2. Property of nationals and companies of either High Contracting Party, including interests in property, shall receive the most constant protection and security within the territories of the other High Contracting Party, in no case less than that required by international law. Such property shall not be taken except for a public purpose, nor shall it be taken without the prompt payment of just compensation. Such compensation shall be in an effectively realizable form and shall represent the full equivalent of the property taken. . . .
>
> \*       \*       \*
>
> 4. [N]ationals and companies [of either High Contracting Party] shall enjoy the right to continued control and management of such enterprises. . . .

(Art. IV, Paras. 1, 2, 4.) In light of the expectations and assurances set forth heretofore, Foremost determined to enter into the venture that is the subject of this claim.

Conduct of Iran in late 1978 and 1979

22. In the latter part of 1978 and January 1979, as a result of acts instigated, encouraged, permitted, condoned, exploited, or ratified by Iran, conditions in Iran grew so dangerous for Foremost personnel and other United States citizens in Iran that Foremost was compelled to withdraw personnel from Iran. Anti-foreign demonstrations, often marked by threats and violence, were prevalent and many foreigners were unable to live safely in Iran. Pak Dairy's Chief Engineer, a Foremost employee, left Iran in November 1978 for his annual leave and was prevented from returning due to the unsafe conditions. Similarly, Pak Dairy's Plant Superintendent, a Foremost employee, was forced to evacuate Iran in February 1979. The Managing Director of Pak Dairy, a Foremost employee, was able to spend only 5 months in Iran in 1979, and was compelled to depart permanently in November 1979. Iran was and is responsible for these unsafe conditions and threatening actions, as well as other acts of violence and disturbance affecting United States companies and citizens, all of which were in violation and disregard of Iran's obligation to maintain the protection and security guaranteed to United States persons and property under Article IV of the Treaty of Amity, international law, principles of law generally recognized by civilized nations, and, to the extent applicable, the laws of Iran. In particular,

a. the Government of Iran in authority prior to February 1979 condoned these conditions and acts and permitted

them to continue from at least the latter part of 1978 until it was succeeded by the present Government;

      b.  before February 1979, persons, agencies, and entities that succeeded to authority as the Government of Iran in February 1979 initiated, authorized, and encouraged these conditions and acts; and

      c.  the Government of Iran that succeeded to authority in February 1979 adopted, exploited, and ratified the conditions and acts that occurred prior to February 1979.

      23.  During and after February 1979, the present Government of Iran continued to instigate, encourage, permit, condone, exploit, and ratify hostile acts towards United States citizens, and other acts of violence and disturbance directed discriminatorily against United States citizens, in the nature of those acts described in the preceding paragraph.  That hostility was manifested in part by an attack on and capture of the United States Embassy and United States citizens in Tehran, which acts were found by the International Court of Justice to violate, among other things, Iran's obligations under the Treaty of Amity and general international law to provide protection and security to United States persons and property.  <u>Case Concerning United States Diplomatic and Consular Staff in Tehran</u>, [1980] I.C.J. 3, 19 Int'l Legal Mat'ls 553.

      24.  In November 1979, Government employed and appointed Directors dominated Pak Dairy for the first time.  Defendants Financial Organization, NICI, IMDBI, and the Foundation for the Oppressed, being shareholders of Pak Dairy and agencies or instrumentalities of the Government of Iran, occupied seats on Pak Dairy's Board of Directors.  These Defendants controlled Pak Dairy's Board of Directors and, when discussed separately, shall hereafter be referred to as "the Pak Dairy Board of Directors."

- 9 -

25. After November 1979, Defendants further interfered with and prevented the exercise of Foremost's rights to participate in the management of Pak Dairy and to enjoy the fundamental shareholder rights associated with Foremost's interests under international law, including the Treaty of Amity, other applicable law, the terms of the Articles of Association of Pak Dairy, the Technical Assistance Agreement between Foremost and Pak Dairy, and related provisions. In particular, Defendants have caused, organized, ratified or approved the following acts in violation of the aforementioned sources of law, including but not limited to those specifically enumerated below.

26. Iran, through the Pak Dairy Board of Directors, refused to pay Foremost cash dividends for the years 1978, 1979, and 1980 that were declared by Pak Dairy and received by Iranian shareholders in 1979, 1980, and 1981, thereby expropriating and otherwise adversely affecting Foremost's property rights in these dividends. Defendants' action also violated Foremost's shareholder rights as reflected in Article 57 of the Articles of Association of Pak Dairy.

27. Iran, through the Government employed and appointed Chairman of Pak Dairy's Board, ousted Mr. Frank Fisher of Foremost from the Board of Directors of Pak Dairy, and through illegal objections to valid proxies proffered by Foremost at a shareholder meeting, prevented Foremost from electing his replacement. This action violated Foremost's shareholder rights as reflected in Articles 40 and 47 of the Articles of Association of Pak Dairy.

28. Iran, through the Government employed and appointed Chairman of Pak Dairy's Board, issued instructions to the current

and prior Managing Directors of Pak not to prepare accounts and monthly financial statements in English, despite prior practice to the contrary, and not to correspond with or send telexes or reports to United States citizens. This action prevented Foremost from meaningfully exercising its rights to participate in Board of Directors and shareholder meetings.

29. Iran, through the Government employed and appointed Chairman of Pak Dairy's Board, generally intimidated and harassed Pak Dairy's Board of Directors to the detriment of Foremost's interest. For example, he threatened not to approve Pak Dairy's balance sheet when Pak Dairy's Board members attempted to exercise their independent judgment in voting on a resolution regarding the declaration of a dividend. Because the withholding of such approval has serious repercussions for individual Board members, such threats guaranteed that Board members would vote with him. Thus, the Board was forced to recommend to the shareholders that Pak's profits be retained and that a reduced dividend be declared.

30. Iran, through the Pak Dairy Board of Directors, foreclosed Pak Dairy from obtaining the benefit of its Technical Assistance Agreement with Foremost. The deprivation of Foremost's technical knowledge has caused loss of profit to Pak Dairy as a whole and drastic reduction of the value of the shares of Pak Dairy.

31. Iran, through the Pak Dairy Board of Directors, has dismissed management provided by Foremost and duly appointed by the Board, and has substituted unsuitable management personnel. Such actions have resulted in decreasing profits, increasing expenses, and further reductions in the value of Foremost's interest in Pak Dairy.

- 11 -

32.  The Pak Dairy Board of Directors has enforced a policy of the Government of Iran sharply curtailing dividends that may be paid to shareholders, regardless of the profits earned by the company.  This directive has contributed to the elimination of any potential market for Foremost's shares by limiting the potential return on investment.

33.  Iran has issued a directive depriving persons outside Iran of the right to sell, transfer or assign their shares. This directive has contributed to the elimination of any potential market for Foremost's shares and has thereby precluded Foremost from mitigating its losses by selling its shares while Pak Dairy was still a valuable enterprise.

34.  Despite a pre-existing Iranian legal requirement that the transfer of shares by foreign investors be approved by the Ministry of Finance and Economic Affairs, Foreign Investment Department, Iran has failed to issue approvals.  This failure has contributed to the elimination of any potential market for Foremost's shares and precluded Foremost from mitigating its losses by selling its shares while Pak Dairy was still a valuable enterprise.

35.  The effect of the foregoing actions, omissions, policies and interferences by Iran has been to take from Foremost and deprive it completely of all rights, powers, and privileges associated with its ownership interest in Pak Dairy, including the right to sell its shares.  Notwithstanding this prior deprivation of its ownership interest, until recently, Foremost has voted its shares by proxy at Ordinary General Meetings of Pak Dairy and has had Iranian representatives present at Pak Dairy Board meetings in an unsuccessful effort to mitigate damages and otherwise to prevent further wasting of corporate assets.  Pak

Case 1:82-cv-00220-RJL   Document 1009   Filed 01/22/82   Page 12 of 14

- 12 -

Dairy is now completely controlled by Iran, and Foremost has been deprived of the enjoyment of its ownership interest.

36. By promoting and encouraging unsafe conditions for Foremost's personnel in Iran, by failing to provide protection and security for Foremost's personnel and property interests in Iran, by blocking dividend payments, by systematically and permanently depriving Foremost of its fundamental rights of ownership, management and participation in Pak Dairy, and by wasting and mismanaging Pak Dairy's affairs as described above, Defendants have taken and deprived Foremost completely of its equity interest and all related property rights in Pak Dairy, discriminatorily and without compensation, thereby unlawfully expropriating or otherwise adversely affecting such interest and rights, in violation of international law, including the Treaty of Amity, and other applicable law.

37. By virtue of the insurance contracts mentioned in paragraph 22 above, OPIC was obliged to, and did, partially compensate Foremost for the above-described expropriation and deprivation, to the extent of the limited coverage provided by those contracts. In connection with said payments, OPIC entered into Settlement Agreements with Foremost by which (1) Foremost retained legal title to all of the shares it owned in Pak Dairy, representing 31 percent of the company, (2) Foremost transferred to OPIC the beneficial interest in those shares that were insured and for which OPIC paid insurance benefits to Foremost (_i e._, 64 percent of Foremost's shares or 19.84 percent of the total shares of Pak Dairy), including the beneficial interest to any claims, causes of action, or other rights in connection with those shares, and (3) Foremost retained a right to receive any amount recovered by OPIC from Defendants in excess of the amount of the insurance benefits paid by OPIC (plus costs).

- 13 -

38. This Complaint seeks recovery for damages relating to that portion of the dividends and equity in Pak Dairy in which Foremost and OPIC hold a joint interest, i.e., 64 percent of Foremost's 31 percent interest or 19.84 percent of the total shares of Pak Dairy.

39. Foremost and OPIC are therefore entitled to prompt, adequate, and effective compensation for the entire value of their 19.84 percent equity interest in Pak Dairy, measured by the fair market value or going concern value of their unimpaired interest in Pak Dairy. The value of that interest as of the date the claim arose was not less than $7,040,000. In addition, Foremost and OPIC are entitled to prompt, adequate, and effective compensation for their share in any dividends declared and not received before the expropriation of their equity interest.

WHEREFORE, plaintiffs Foremost and OPIC pray for relief as follows:

1. That plaintiffs Foremost and OPIC recover damages in the amount of $7,040,000, plus interest, as compensation for the unlawful expropriation of Foremost's and OPIC's 19.84 percent equity interest in Pak Dairy;

2. That plaintiffs Foremost and OPIC recover damages in the amount of 64 percent of all dividends owing to but not received by Foremost, plus interest, as compensation for the unlawful expropriation of such dividends;

3. That plaintiffs are awarded attorneys fees, costs and prejudgment interest; and

- 14 -

4.   That plaintiffs are granted such further relief as the court deems proper.

*Elizabeth Trosman*
Mark R. Joelson
Elizabeth Trosman

WALD, HARKRADER & ROSS
1300 19th Street, N.W.
Washington, D.C.  20036
(202) 828-1603

Attorneys for Plaintiffs